**UNITED STATES of America**

v.

**Mark McCURDY.**

**No. CR–06–80–B–W.**

United States District Court, D. Maine.

May 13, 2009.

Jeffrey M. Silverstein, Law Office of Jeffrey M. Silverstein, PA, Bangor, ME, for Defendant.

Joel B. Casey, Office of the U.S. Attorney, District of Maine, Bangor, ME, for Plaintiff.

**PRELIMINARY ORDER ON MOTION FOR NEW TRIAL**

JOHN A. WOODCOCK, JR., Chief Judge.

On December 31, 2008, a federal jury found Mark McCurdy guilty of being a felon in possession of a firearm, a violation of 18 U.S.C. § 922(g)(1). *Jury Verdict Form* (Docket # 148). On January 26, 2009, Mr. McCurdy, acting *pro se,* moved for a new trial, and on March 16, 2009, Mr. McCurdy's defense counsel adopted the motion. Pro Se *Mot. for New Trial* (Dock-

et # 155); *Def.'s Notice of Intent to Adopt Pro Se Mot. for New Trial* (Docket # 162).

The Government charged that Mr. McCurdy knowingly possessed a Colt Match H–BAR .223 caliber rifle, bearing serial number CMH037251.[1] *Indictment* (Docket # 1). This firearm, which a police officer discovered in Mr. McCurdy's attic on March 27, 2006, was marked and admitted at trial as Government Exhibit 2. The evidence at trial traced the purchase of Government Exhibit 2 to Smitty's Trading Post in Machias, Maine, on July 14, 2000. The Government called as witnesses Stephen Smith, then a federally-licensed firearms dealer and proprietor of Smitty's, and Janelle Hayward, then Mr. McCurdy's girlfriend. Reviewing his contemporaneous record, Mr. Smith testified that on July 14, 2000 he sold a firearm described as a Colt Match H–BAR .223 caliber rifle, bearing serial number CMH037251. He then compared the serial number from the transaction record to the serial number of Government Exhibit 2, the firearm found in Mr. McCurdy's attic, and confirmed they were the same. Ms. Hayward testified that she bought the firearm for Mr. McCurdy, that it was his idea to buy the firearm, that she did so with his money, and that Mr. McCurdy later took possession of it. Mr. Smith and Ms. Hayward provided the evidentiary foundation that linked the firearm that was sold on July 14, 2000 to Government Exhibit 2, the firearm that was found in Mr. McCurdy's attic on March 27, 2006. This evidence and other evidence of actual and constructive possession made a compelling argument that Mr. McCurdy knowingly possessed Government Exhibit 2.

In his motion, Mr. McCurdy claims that the testimony of Mr. Smith and Ms. Hayward regarding their sale and purchase of Government Exhibit 2 was false. He contends that Mr. Smith must have lied when he testified that he sold Government Exhibit 2 on July 14, 2000 because Government Exhibit 2 would have been illegal to sell at that time under a then-existing federal ban on assault weapons. This claim depends on three propositions. First, that Mr. Smith testified that on July 14, 2000 he sold Government Exhibit 2 exactly as it appeared at trial. Second, that Government Exhibit 2 as it appeared at trial would have been illegal to sell on July 14, 2000 under the then-existing federal ban on assault weapons because it has a collapsible stock and a sixteen inch barrel with a flash suppressor. Third, that Government Exhibit 2 was illegal when it was sold. From these propositions, Mr. McCurdy reasons that Mr. Smith and Ms. Hayward must have lied about the sale, because Mr. Smith, a federally-licensed firearms dealer, never would have sold an illegal firearm to Ms. Hayward.

Mr. McCurdy says that Colt Firearms is the source of his second assertion that Government Exhibit 2 would have been illegal under the assault weapons ban:

> Colt Firearms, the manufacturer of the Colt Hatch [sic] H–Bar Serial # CMH037251, has identified that rifle as being of POST ASSAULT WEAPONS BAN MANUFACTURE with a solid stock containing a cleaning kit and a 20 inch heavy barrel with no provision for the attachment of a flash suppressor. Colt further stated that the rifle identi-

---

1. The name of the company is Colt's Manufacturing Company LLC. Colt's is often referred to without the apostrophe s, and also as Colt or Colt's Firearms. It was once known as Colt's Patent Fire Arms Manufacturing Company, and through the ages, the "Firearms" name has been associated with the company. For an interesting description of the history of Colt, beginning with Sam Colt's U.S. patent in 1836, see http://coltsmfg.com/cmci/history.asp. This Order uses the various names interchangeably.

fied as Government Exhibit # 2 would have been an illegal firearm under the assault weapons ban in effect on July 14, 2000.

*Def.'s Revised Mot. for New Trial* ¶ 6 (Docket # 163) (Def.'s Mot.) (capital letters in original). Only by implication does Mr. McCurdy substantiate his third assertion that Government Exhibit 2 was illegal when Mr. Smith sold it. He represents that the Colt firearm bearing serial number CMH037251 was manufactured with a twenty inch barrel, solid stock, and without provision for the attachment of a flash suppressor. By attributing this representation to Colt, and contrasting these characteristics with the collapsible stock, sixteen inch barrel, and flash suppressor of Government Exhibit 2, he implies that no single firearm could ever have these mutually exclusive characteristics at different times, and that the firearms have had their respective characteristics since manufacture.[2]

In its response, the Government first observes that "[n]one of the alleged statements attributed to 'Colt Manufacturing'

[sic] are supported by affidavits or other documentary proof." *Gov't's Resp. to Def.'s Revised Mot. for New Trial* at 2 (Docket # 166). The Government goes on to say that although Mr. Smith and Ms. Hayward testified that "Government Exhibit 2 *looked like* the firearm that was the subject of the July 14, 2000 transaction, ... neither positively and unequivocally identified it as such." *Id.* at 3 (emphasis in original). The Government also points out that the serial number of the firearm appears on the lower receiver of the firearm and that the firearm could well have been altered with a new barrel and stock after the sale. *Id.* at 5. Finally, the Government argues that Mr. McCurdy's contentions do not amount to newly discovered evidence within the meaning of Rule 33. *Id.* at 3–4.

The Court addresses the Government's first point only and seeks the factual underpinning of the motion for new trial. Congress enacted the ban on the manufacture and sale of assault weapons in 1994 and repealed it in 2004.[3] The Smitty's transaction occurred while the ban was in

---

**2.** Regarding Government Exhibit 2, Mr. McCurdy also states that "[a] rifle that was manufactured after the assault weapons ban, that had both a collapsible stock and a 16 inch barrel with flash suppressor, would have been an illegal firearm on July 14, 2000." *Def.'s Mot.* ¶ 10. This statement implies that these characteristics were original and not a result of post-manufacture/post-sale alterations.

**3.** Section 110102(a) of Title XI of the Violent Crime Control and Law Enforcement Act of 1994, commonly referred to as the semiautomatic assault weapons ban, made it "unlawful for a person to manufacture, transfer, or possess a semiautomatic assault weapon." Pub.L. No. 103–322, 108 Stat. 1796, 1996 (1994) (codified at 18 U.S.C. § 922(v)(1)). Section 110102(b) of the Act classified as a "semiautomatic assault weapon" a semiautomatic rifle that has the ability to accept a detachable magazine and at least two of five

enumerated characteristics, including "a folding or telescoping stock" and "a flash suppressor or threaded barrel designed to accommodate a flash suppresser." 108 Stat. 1796, 1998 (codified at 18 U.S.C. § 921(a)(30)(B)); *see Olympic Arms v. Buckles*, 301 F.3d 384, 385–87 (6th Cir.2002); *see also United States v. Laureano–Velez*, 424 F.3d 38, 41 (1st Cir. 2005) (discussing the so-called "grandfather" clause of the assault weapons ban, which exempts from the ban weapons that were lawfully possessed before enactment of the ban). The assault weapons ban expired on September 13, 2004, and " § 922(v)'s prohibition against possession and § 921's definition of a semiautomatic assault weapon were repealed as of that date." *United States v. Myers*, 553 F.3d 328, 329–330 (4th Cir.2009) (citing Pub.L. No. 103–322, § 110105, 108 Stat. 1796, 2000 (1994)), *petition for cert. filed*, —— U.S.L.W. —— (U.S. Apr. 30, 2009) (No. 08–10125).

effect. If Mr. McCurdy is right that Government Exhibit 2 would necessarily have been illegal to sell while the ban was in effect, one of the premises of the Government's case against him would be called into serious question, because Mr. Smith testified that the serial number on the firearm he sold to Ms. Hayward matched the serial number on Government Exhibit 2.[4]

Mr. McCurdy attributes to Colt Firearms the statement that Government Exhibit 2 was illegal to sell on July 14, 2000. He also attributes to Colt the list of characteristics of the Colt firearm bearing serial number CMH037251, which he uses to imply that Government Exhibit 2 was necessarily illegal in 2000 and therefore manufactured before 1994 or after 2004. It is apparent from his attribution of these representations to Colt Firearms that Mr. McCurdy has been in contact with someone at Colt.

To clarify this factual issue and whether it should be explored further, the Court, therefore, will give Mr. McCurdy a period not to exceed thirty (30) days to file with the Court a suitable affidavit from a Colt's Manufacturing Company LLC representative supporting the extra-record factual underpinnings of his motion. Specifically, the Court ORDERS the Defendant to produce within thirty days:

1) An affidavit from a Colt's Manufacturing Company LLC representative swearing under oath, under penalty of perjury, and based on his or her personal knowledge the truth of its contents;[5]

2) A statement as to when Colt's Manufacturing Company LLC manufactured the receiver bearing serial number CMH037251;

3) A statement as to whether the sale of the receiver bearing serial number CMH037251 would have been illegal on July 14, 2000; and,

4) Such further information as Defendant believes supports the allegations in his motion.

If he fails to do so, the Court will not consider his unsupported factual allegations in ruling on the motion for new trial. The thirty-day period will be extended only for good cause shown by the Defendant.

SO ORDERED.

---

**4.** The Court is concerned that the Defendant is sending it on a wild goose chase. Fairly viewed, the evidence at trial established that the serial number in the July 14, 2000 transaction record is the same serial number on the receiver of the firearm that was found in Mr. McCurdy's attic and marked and admitted at trial as Government Exhibit 2. It may well be that the firearm was altered after July 14, 2000 in such a way that it would have been illegal to sell in 2000, but that would not mean that the weapon as it was then constituted was illegal to sell in 2000. The implication would be that someone, perhaps the Defendant, later altered the firearm to transform

it into assault weapon, a fact that if proven would not assist Mr. McCurdy.

**5.** The Court expects that to the extent it asserts facts the affidavit from the Colt representative will be based on his or her personal knowledge of Colt's business records and not on his or her belief. In other words, the affiant should swear that his or her statements are true. On the other hand, if the affiant is expressing an opinion as to the legality of the sale, the Court does not expect the affidavit to assert personal knowledge.